IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
05/08/2015

| | |
|---|---|
| IN RE: § | |
| RICHARD K. HARRIS § | CASE NO: 13-36395 |
| Debtor(s) § | |
| § | CHAPTER 7 |

## MEMORANDUM OPINION

Margaret McClure seeks sanctions against the Trustee, his lawyer, and his law firm. Because there are material questions of fact concerning the propriety of the filing of the complaint against McClure, the Court denies summary judgment as to whether Adversary Proceeding No 14-3013 should have been filed. Although there is no material question of fact as to whether the Adversary Proceeding should have been dismissed prior to the expiration of the Rule 9011 Safe Harbor period, Rule 9011 does not authorize the imposition of sanctions for failure to withdraw a complaint that was properly filed in the first instance. Accordingly, summary judgment is denied as to the imposition of Rule 9011 sanctions for the failure to withdraw the pleading. Summary judgment is granted against the Trustee under 28 U.S.C. § 1927 as to liability for maintaining suit against McClure after it became apparent that the lawsuit should be dismissed. Accordingly, the Trustee, his lawyer and law firm are liable for Ms. McClure's fees and expenses incurred in the adversary proceeding after the expiration of the Safe Harbor period.

### Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[1] Fed. R. Civ. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the evidence. A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412

---

[1] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

(5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Malacara*, 353 F.3d at 403. Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. *Sossamon*, 560 F.3d at 326. The non-moving party must cite to specific evidence demonstrating a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986). The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Norwegian Bulk Transp. A/S*, 520 F.3d at 412. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Celotex*, 477 U.S. at 324. The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

## Background

Richard K. Harris, acting through his attorney Margaret McClure, filed a chapter 7 bankruptcy petition on October 15, 2013. On that same date, he filed his schedules and statements. During the months and days preceding the filing of his petition, Harris purportedly

divorced from his wife, Darlene Riley. As part of the purported divorce, Harris transferred substantial assets, and perhaps substantially all of his material assets, to his wife.

The schedules and statements filed by McClure for Harris omit disclosure of his divorce and of the transfers. The schedules and statements were prepared by McClure, signed by Harris, and filed under penalty of perjury. Harris is a former United States Attorney. McClure is a board certified bankruptcy lawyer. Both were keenly aware of the implications of filing false schedules and statements.

Before filing the schedules and statements and petition, Harris had informed McClure of his divorce and of the transfers made pursuant to their divorce. Harris had made other substantial transfers, which were not disclosed to McClure, and were not listed on his schedules and statements.

During the course of the proceeding, Harris testified falsely under oath about some of the transfers. The Trustee sued Harris to deny his discharge.

Harris eventually voluntarily waived his discharge. However, before waiving his discharge, Harris filed an extensive twelve-page affidavit in which he alleged that he had fully informed McClure of all of the assets and transfers. Harris blamed McClure for the filing of the false schedules and statements. The Harris Affidavit demonstrated that, at a minimum, McClure had failed to disclose material events and transfers that had been disclosed to her. That non-disclosure, in turn, could have caused Harris to lose his discharge for making a false statement or oath and from the implication that the non-disclosure may have been part of a fraudulent scheme. 11 U.S.C. § 727(a)(2), § 727(a)(4).

Prior to suing McClure, the Trustee reviewed McClure's files pertaining to the Harris bankruptcy. Based on that file review, it was apparent that Harris had told McClure of the divorce and of some of the transfers.

However, things were not that simple. While the Trustee had concluded that McClure had assisted Harris in filing false schedules and statements, the Trustee also concluded[2] that Harris and his wife had manufactured their divorce and property settlement. The Trustee concluded that Harris was not credible. Nevertheless, the facts remained that:

- McClure had actual knowledge of the divorce;
- McClure had actual knowledge of the transfers made pursuant to the divorce;
- McClure filed the false schedules and statements in her capacity as Harris' attorney.

During this time, McClure and her counsel were trying to persuade the Trustee and his attorney that there was not an adequate basis for suing McClure. Although McClure and her counsel eventually persuaded the Trustee that his lawsuit was without merit, the Trustee remained unpersuaded by the time that he filed the suit.

On June 30, 2014[3] the Trustee sued McClure for legal malpractice regarding her representation of Harris. Despite McClure's availability, the Trustee filed suit before taking McClure's deposition.

The Trustee has, on more than one occasion, referenced the lawsuit as a "placeholder" suit.

There were repeated conversations and multiple emails in which McClure and her counsel sought the voluntary dismissal of the complaint. On July 25, 2014, McClure's counsel

---

[2] The Trustee has sued Darlene Riley alleging that the divorce and property settlement were sham transactions. Riley and Harris have vigorously denied the allegations. The matter remains pending. The Court expresses no view on the merits of the allegations, or the Trustee's conclusions.

[3] The extended deadline set by the Court for the filing of a complaint against McClure.

sent a Rule 9011 demand letter, with a copy of a draft Rule 9011 motion[4], seeking the dismissal of the legal malpractice complaint.

The Trustee and his lawyer did not ignore the demand. Within a few days, and well before the expiration of the approximate August 15, 2014 Safe Harbor deadline in the July 25, 2014 demand letter, the Trustee determined that he was unable to prove causation. Causation was a required element of the Trustee's burden of proof. Accordingly, the Trustee and his counsel decided that the complaint against McClure had to be dismissed.

However, the Trustee also concluded that he should demand that McClure disgorge the $2,500.00 in attorney's fees paid by Harris to McClure. Harris had paid these fees to McClure, and there was little question that McClure failed to include the divorce information in the schedules and statements. Disgorgement is a potentially appropriate remedy under § 329(b)(1) of the Bankruptcy Code. However, the Complaint filed against McClure did not seek disgorgement.

Nevertheless, the Trustee demanded disgorgement as a condition to dismissal of the Adversary Proceeding. McClure refused the condition imposed by the Trustee[5]. Despite the fact that the Trustee had decided that the lawsuit was without merit, he failed to dismiss the lawsuit by the end of the Safe Harbor deadline.

On October 29, 2015 (two and one-half months after the Safe Harbor Deadline), the Trustee moved to dismiss McClure from the adversary proceeding. Although Harris objected to the dismissal, the proceeding against McClure was dismissed on January 20, 2015.

---

[4] The final motion varied from the draft motion through the addition of a request for § 1927 relief. The Court need not address whether this addition violates the command that a motion for sanctions be the same as the draft motion sent under Rule 9011. *See In re Pratt,* 524 F.3d 580 (5th Cir. 2008).

[5] The Court readily understands why a licensed attorney would refuse to settle—for any amount—a lawsuit with allegations of the type made by the Trustee. It was reasonable for McClure to refuse to enter into a compromise to protect her reputation. Such a refusal would be reasonable even if she had disgorgement liability. The Trustee remained free to pursue disgorgement even if the lawsuit had been timely dismissed.

**The Initiation of the Lawsuit**

The adversary proceeding was filed against McClure after it became apparent that McClure had failed to list the Harris/Riley divorce proceeding, or any of the transfers that accompanied the divorce proceeding. Although McClure offers several excuses for not disclosing the transfers, her principal excuse is that her client told her that the transfers were not actually transfers and did not need to be disclosed.

McClure has offered no excuse for failing to disclose the divorce proceeding itself. Had McClure disclosed the divorce proceeding, it is likely that a trustee would have been able to discover the attendant transfers. Accordingly, on initial review by a trustee, these non-disclosures appear to be part of an effort to conceal.

McClure's excuse for not disclosing the transfers fails to recognize her duties as counsel. McClure is a debt relief agency. 11 U.S.C. § 101(12A). She provided legal counsel to an assisted person that constituted "Bankruptcy Assistance" under 11 U.S.C. § 101(4A). She charged a fee for the services.

As a debt relief agency, she was prohibited from assisting Harris in making "a statement in a document filed in a case or proceeding under this title, that is untrue or misleading, or that upon the exercise of reasonable care, should have been known by such agency to be untrue or misleading." 11 U.S.C. § 526(a)(2).

It is irrelevant that Harris allegedly approved and encouraged the omissions in the schedules and statements. McClure actually knew that the omission of the divorce proceeding constituted an untrue or misleading statement in response to Question 4 on the Statement of Financial Affairs. She knew, or would have known with reasonable inquiry, that the omission of

the divorce-related transfers from disclosure under Question 10 of the Statement of Financial Affairs was an untrue or misleading statement.

With these glaring disclosure flaws, McClure faults the Trustee for filing suit against her.

McClure's primary argument is that the divorce related non-disclosures were not the events that would eventually lead to the loss of Harris' discharge. Therefore, McClure alleges that the Trustee could not demonstrate that—but for McClure's omissions—Harris would not have lost his discharge. Indeed, it is clear that Harris would have lost his discharge due to his own conduct. McClure concludes that the Trustee should not have filed the lawsuit because of an inability to prove independent causation.

In an analogous situation, the Fifth Circuit reversed the imposition of sanctions when "reliance" had not been factually determined before the filing of a lawsuit for negligent misrepresentation. In *Calhoun*, the Fifth Circuit made a distinction between bringing a claim that is "legally implausible" versus a claim that is "factually unsupported." The Court suggested that it was improper for the District Court to award sanctions based on the conclusion that the plaintiff lacked factual support necessary to establish reliance: "A plaintiff need not have a fully developed factual case in order to base its suit upon a well-recognized legal claim." *FDIC v. Calhoun,* 34 F.3d. 1291, 1298 (5th Cir. 1994).

McClure's basis for sanctions relies on the argument that the facts in this case did not support independent causation. However, there is no evidence to suggest that the Trustee lacked a good faith belief that he could prevail on the merits at the time he filed the lawsuit. It was not until several months later that the Trustee concluded that he could not prove causation.

Indeed, the issue of independent causation was not identified in the two principal letters sent by McClure's counsel. One was sent on July 22, 2014 and the second (the Safe Harbor Letter) was sent on July 25, 2014.

The competent summary judgment evidence does not support a finding that the initiation of the complaint against McClure was not justified.

### Failure to Withdraw

After the Trustee recognized that he could not sustain the adversary proceeding, he did not dismiss the proceeding. Instead, he demanded disgorgement by McClure.

By July 29, 2013, the Trustee had communicated to McClure that he would no longer be pursuing the malpractice claim. (*See* ECF No. 109-1 at 8) (the Trustee's counsel stated in her affidavit that "on July 29, 2014, I informed Durrschmidt that the Trustee would dismiss the Supplemental Complaint against McClure and settle the estate's malpractice claims…"). During that same conversation, the Trustee offered to dismiss the complaint in exchange for the $2,500.00 disgorgement amount. McClure rejected that offer. On August 15, 2014, the Safe Harbor period expired.

To be sure, it was permissible for the Trustee to make the settlement offer. But, once that settlement offer was rejected, the Trustee was obliged to dismiss the adversary proceeding.

Dismissal of the adversary proceeding would not have precluded a separate disgorgement proceeding against McClure. But, inasmuch as the Trustee had not pled disgorgement in the already-filed adversary proceeding, he could not defer dismissal of the adversary complaint while attempting to obtain money from McClure for the disgorgement.

However, the Court reads Rule 9011 to deal only with the filing of papers, not with the delayed withdrawal of them. *Thomas v. Capital Svcs., Inc.,* 836 F.2d 866 (5th Cir. 1988). A rule

11 sanction is appropriate only as measured by the "snapshot" rule, measuring the attorney's conduct as of the time of the signing." *FDIC v. Calhoun,* 34 F.3d. 1291, 1296 (5th Cir. 1994).

If there is an appropriate penalty against the Trustee for his failure to withdraw the pleading once he recognized that he could not prevail, it does not arise under Rule 9011. Accordingly, summary judgment is denied as to McClure's Rule 9011 claim.

However, McClure also seeks relief under 28 U.S.C. § 1927. This section provides that:

> An attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct.

This case is remarkably similar to *Ratliff v. Stewart,* 508 F.3d 225 (5th Cir. 2007). Ratliff was seriously injured by a drug prescribed by her physician, a Dr. Stewart from McComb, Mississippi. Her attorneys sued Dr. Lawrence Stewart in a medical malpractice lawsuit, and sought discovery from him. Dr. Lawrence Stewart notified Ratliff's counsel that he had not been Ratliff's physician. Counsel did not withdraw the lawsuit and did not investigate whether to withdraw the lawsuit. Lawrence Stewart was forced to answer the suit, and filed a motion for summary judgment. The motion for summary judgment was supported by an affidavit that he had never treated Ratliff.

The correct defendant should have been the Estate of Edsel Ford Stewart. Dr. Edsel Stewart was the father of Dr. Lawrence Stewart.

After confirming this information, Ratliff's lawyer waited a full month before dismissing the lawsuit against Dr. Lawrence Stewart. The Fifth Circuit found that the award of § 1927 fees "was not even a close question." *Ratliff* at 234.

To justify fee shifting under § 1927, the movant must demonstrate that the conduct of opposing counsel is both "unreasonable" and "vexatious." *FDIC v. Calhoun,* 34 F.3d 1291, 1300-01 (5th Cir. 1994). The failure to withdraw the lawsuit against McClure meets both standards.

First, the failure to withdraw the lawsuit was not reasonable. The Trustee had concluded that he could not establish the required causation. Once the Trustee reached that conclusion, he could not maintain the lawsuit. Failure to withdraw the lawsuit was not reasonable.

Second, the failure to withdraw the lawsuit was vexatious. Based on the summary judgment record before the Court, the only reason for the delay by the Trustee was to attempt to force McClure to disgorge her fees. That was a matter not pled. It is vexatious to utilize a complaint that is without merit to leverage money from the Defendant. Inasmuch as the purpose of maintaining the lawsuit was to leverage a settlement—and with no intention of pursuing the lawsuit on its merits—the Trustee's conduct falls within the core purpose of § 1927. It is unambiguous that a lawsuit may not be preserved for the purpose of extorting a settlement. *Edwards v. General Motors Corp.,* 153 F.3d 242 (5th Cir. 1998). Edwards had sued General Motors in an employment discrimination lawsuit. On December 7, 1996, Edwards and her lawyer "concluded that they could not win their case." *Edwards* at 244. Nevertheless, Edwards continued to prosecute the lawsuit until a summary judgment was issued against her on January 30, 1997. *Edwards* at 245. Section 1927 sanctions were affirmed based on a finding that the case was kept alive "hoping to extort a nuisance value settlement." *Edwards* at 247.

The Court notes that the only fees that should be shifted are those that accrued after the date on which the withdrawal should have occurred. Even in *Ratliff,* where the wrong defendant was sued, the Court concluded that the suit was not brought vexatiously. It was not until the date

on which the suit should obviously have been withdrawn that vexatiousness arose. *Ratliff* at 235. The fee shifting cannot occur until both the unreasonableness and the vexatiousness standards are satisfied. *Ratliff* at 235.

Because the Trustee maintained his complaint against McClure long after determining that he could not prevail—and because he did so solely for the purpose of obtaining a settlement with McClure—the Trustee should bear McClure's costs that were incurred during that time period.

The Court recognizes that most of McClure's costs were incurred in persuading the Trustee to dismiss the lawsuit. Those costs are not recoverable under the American Rule. However minimal, McClure should not be forced to expend funds to obtain a dismissal after the Trustee determined that his case was without merit. Summary judgment is granted to McClure with respect to her reasonable costs and fees incurred after August 15, 2014[6]. The amount of such fees and expenses may be agreed by the parties, or determined after an evidentiary hearing.

### Conclusion

McClure is granted a judgment on the issue of liability for her reasonable costs and fees incurred after August 15, 2014. All other summary relief is denied.

SIGNED **May 8, 2015.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE

---

[6] The Court utilizes the Safe Harbor deadline even though Rule 9011 does not apply. McClure gave the Trustee a deadline for withdrawal under Rule 9011. It would not be reasonable to include fees between July 29, 2014 and August 15, 2014. This two week period gave the Trustee a reasonable opportunity to act on the conclusions that he had reached on July 29, 2014, and comports with the deadline set by McClure.